IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ZETRO MANAGEMENT COMPANY LLC | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-cv-00254-KC |
| | § | |
| NATIONWIDE PROPERTY AND | § | |
| CASUALTY INSURANCE COMPANY | § | |
| *Defendant.* | § | |

**DEFENDANT NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY'S FIRST AMENDED ANSWER AND DEFENSES TO PLAINTIFF'S ORIGINAL PETITION**

Defendant Nationwide Property and Casualty Insurance Company ("Defendant" or "Nationwide") files this First Amended Answer and Defenses to Plaintiff's Original Petition, respectfully showing the Court as follows:

## I. DEFENDANT'S FIRST AMENDED ANSWER

Nationwide makes the following admissions and denials to claims of Plaintiff Zetro Management Company LLC ("Plaintiff") as authorized by Federal Rule of Civil Procedure 8(b):

### A. DISCOVERY CONTROL PLAN

1.     Nationwide denies that discovery in this case should be conducted under the Texas Rules of Civil Procedure. Discovery should be conducted pursuant to the Federal Rules of Civil Procedure and any scheduling orders issued by this Court.

### B. PARTIES

2.     Based upon information and belief, Nationwide admits that Plaintiff Zetro Management Company LLC is a limited liability company, and, after a diligent search of publicly available information, all members of Plaintiff Zetro Management Company LLC are individuals domiciled within the State of Texas.



**DEFENDANT'S EXHIBIT A**

3.      Nationwide admits that it is a corporation incorporated in the state of Ohio and maintains its principal place of business in Ohio. Nationwide further admits tit has been served and has made an appearance in this case.

## C. JURISDICTION

4.      Paragraph 4 of Plaintiff's Original Petition addresses personal jurisdiction in Texas state court and does not require a response from Defendant. To the extent a response is required, Nationwide admits jurisdiction is proper in United States District Court for the Western District of Texas, El Paso Division.

## D. VENUE

5.      Paragraph 5 of Plaintiff's Original Petition addresses venue in Texas state court and does not require a response from Nationwide. To the extent a response is required, Nationwide admits that venue is proper in the United States District Court for the Western District of Texas, El Paso Division.

## E. CONDITIONS PRECEDENT AND NOTICE

6.      Nationwide denies the allegations in Paragraph 6 of Plaintiff's Original Petition.

7.      Nationwide denies the allegations in Paragraph 7 of Plaintiff's Original Petition.

## F. AGENCY AND RESPONDEAT SUPERIOR

8.      Nationwide admits that its assigned adjuster acted as an authorized agent of Nationwide with respect to the Claim made basis of this lawsuit. Nationwide denies the remaining allegations set forth in paragraph 8 of Plaintiff's Original Petition.

## G. FACTS

9.      Nationwide admits Plaintiff is a named insured under the commercial insurance policy issued by Nationwide, bearing Policy No. ACP BPAK 5586089924, which insured the commercial

property located at  1340 North Zaragoza Road, El Paso, Texas 79936 (the "Property") for a policy period of August 6, 2021 to August 6, 2022, subject to the terms, conditions, limitations, and exclusions of that Policy(the "Policy"). Nationwide further admits that the Policy speaks for itself and provides coverage in accordance with the terms, conditions, limitations, and exclusions of the Policy. Nationwide denies the remaining allegations set forth in paragraph 9 of Plaintiff's Original Petition.

10.     Nationwide admits that on September 20, 2021, a claim was reported for alleged damage to the Plaintiff's property located at 1340 North Zaragoza Road, El Paso, Texas 79936 (the "Property") allegedly caused by a storm dated on or about August 14, 2021. Defendant admits that August 14, 2021, is a date within the Policy period. Nationwide denies the remaining allegations in Paragraph 10 of Plaintiff's Original Petition.

11.     Nationwide admits that on September 20, 2021, a claim was reported for alleged damage to the Property to which Nationwide assigned claim number 419464-GM (the "Claim"). Nationwide denies the remaining allegations in Paragraph 11 of Plaintiff's Original Petition.

12.     Nationwide admits that Plaintiff demanded Nationwide issue Policy benefits resulting from the Claim. Nationwide denies the remaining allegations in Paragraph 12 of Plaintiff's Original Petition.

13.     Nationwide admits that it assigned Lonnie Figgins as a claim associate to adjust the Claim, that engineer Luis Espino, formerly of Rimkus Engineering, inspected the Property, that Espino found no hail damage to the roofing covering, and the moisture stains in the building were due to roof ponding rather than a wind or hailstorm event, and that damage caused by water overflow and wear and tear are exclusions outlined in the policy, and that Nationwide communicated its position

on the Claim, based on the engineer's report, to Plaintiff in a letter dated May 3, 2022. Nationwide

denies the remaining allegations in Paragraph 13 of Plaintiff's Original Petition.

14.     Nationwide admits the May 5, 2022, letter outlined that the damages were attributed to wear

and tear and therefore not eligible for coverage under the policy. Nationwide denies the remaining

allegations in Paragraph 14 of Plaintiff's Original Petition.

15.     Nationwide denies the allegations in Paragraph 15 of Plaintiff's Original Petition.

16.     Nationwide denies the allegations in Paragraph 16 of Plaintiff's Original Petition.

17.     Nationwide denies the allegations in Paragraph 17 of Plaintiff's Original Petition.

18.     Nationwide denies the allegations in Paragraph 18 of Plaintiff's Original Petition.

19.     Nationwide denies the allegations in Paragraph 19 of Plaintiff's Original Petition.

20.     Nationwide denies the allegations in Paragraph 20 of Plaintiff's Original Petition.

21.     Nationwide denies the allegations in Paragraph 21 of Plaintiff's Original Petition.

22.     Nationwide denies the allegations in Paragraph 22 of Plaintiff's Original Petition.

23.     Nationwide denies the allegations in Paragraph 23 of Plaintiff's Original Petition.

24.     Nationwide denies the allegations in Paragraph 24 of Plaintiff's Original Petition.

25.     Nationwide denies the allegations in Paragraph 25 of Plaintiff's Original Petition.

26.     Nationwide denies the allegations in Paragraph 26 of Plaintiff's Original Petition

## H. CAUSES OF ACTION

27.     Paragraph 27 of Plaintiff's Original Petition contains a reference to the foregoing

paragraphs for incorporation and does not require a response by Nationwide. To the extent that a

response is required, Nationwide reasserts its admissions and denials set forth in the foregoing

paragraphs of this Answer.

**I.      Breach of Contract**

28.     Nationwide admits the Policy constituted a contract between Plaintiff and Nationwide. Nationwide denies all other allegations in Paragraph 28 of Plaintiff's Original Petition.

29.     Nationwide denies the allegations in Paragraph 29 of Plaintiff's Original Petition.

30.     Nationwide denies the allegations in Paragraph 30 of Plaintiff's Original Petition.

31.     Nationwide denies that Plaintiff is entitled to recover the damages or relief identified in Paragraph 31 of Plaintiff's Original Petition. Nationwide further denies the remaining allegations in Paragraph 31 of Plaintiff's Original Petition.

## II.    Prompt Payment of Claims Statute

32.     Nationwide denies the allegations in Paragraph 32 of Plaintiff's Original Petition.

33.     Nationwide denies that Plaintiff is entitled to recover the damages or relief identified in Paragraph 33 of Plaintiff's Original Petition.

## III.    Bad Faith/DTPA

34.     Paragraph 34 of Plaintiff's Original Petition contains a statement or contention of law that does not require a response from Nationwide. To the extent that a response is required, Nationwide admits it is required to comply with Chapter 541 of the Texas Insurance Code. Nationwide further contends it complied with Chapter 541 of the Texas Insurance Code with respect to the Claim.

35.     Nationwide denies the allegations in Paragraph 35 of Plaintiff's Original Petition, including the individual subparagraph.

36.     Nationwide denies the allegations in Paragraph 36 of Plaintiff's Original Petition, including subparagraphs (1) through (5).

37.     Nationwide denies the allegations in Paragraph 37 of Plaintiff's Original Petition, including subparagraphs (1) through (5).

38.     Nationwide denies the allegations in Paragraph 38 of Plaintiff's Original Petition.

39.    Nationwide denies the allegations in Paragraph 39 of Plaintiff's Original Petition, including subparagraphs (1) through (3).

40.    Nationwide denies the allegations in Paragraph 40 of Plaintiff's Original Petition.

### IV.    Attorney's Fees

41.    Nationwide admits Plaintiff engaged the Zar Law Firm for representation in this matter. Nationwide denies the remaining allegations in Paragraph 41 of Plaintiff's Original Petition. Nationwide further denies that Plaintiff is entitled to recover the damages or relief identified in Paragraph 41 of Plaintiff's Original Petition.

42.    Nationwide denies that Plaintiff is entitled to recover the damages or relief identified in Paragraph 42 of Plaintiff's Original Petition. Nationwide further denies the remaining allegations in Paragraph 42 of Plaintiff's Original Petition.

43.    Nationwide denies that Plaintiff is entitled to recover the damages or relief identified in Paragraph 43 of Plaintiff's Original Petition. Nationwide further denies the remaining allegations in Paragraph 43 of Plaintiff's Original Petition.

### I. STATEMENT OF RELIEF AND STIPULATED DAMAGES

44.    Nationwide lacks sufficient information to either admit or deny the amount of damages Plaintiff presently seeks. Accordingly, Nationwide denies that Plaintiff is entitled to the damages and relief sought in Paragraph 44 of Plaintiff's Original Petition.

### K. RESERVATION OF RIGHTS

45.    Paragraph 45 of Plaintiff's Original Petition contains a reservation of the rights to prove the amount of damages at trial and amend its petition, which requires no response from Nationwide. To the extent a response is required, Nationwide denies that Plaintiff can freely amend

its petition and that any amendment must comply with the Court's Scheduling Order and federal law. Further, Nationwide denies that Plaintiff is entitled to the damages and relief sought.

## L. JURY DEMAND

46.    Paragraph 46 of Plaintiff's Original Petition addresses Plaintiff's demand for a jury trial and requires no response from Nationwide.

## M. PRAYER

47.    Nationwide denies the allegations sought in the Prayer of Plaintiff's Original Petition. Nationwide further denies Plaintiff is entitled to any of the damages or relief sought by Plaintiff in the prayer for relief in Plaintiff's Original Petition.

## II. DEFENDANT NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY'S DEFENSES

48.    In addition to the foregoing specific denials, Nationwide asserts, without limitation, the following defenses:

### First Defense
### Policy Provisions

49.    Plaintiff cannot recover, in whole or in part, on its breach of contract claim, and consequently on any of the other causes of action alleged in its Original Petition, because the insurance policy issued by Nationwide to Plaintiff contains provisions, conditions, limitations, and exclusions negating coverage, in whole or in part, for the damages alleged by Plaintiff. Nationwide's contractual obligations are determined by the provisions, conditions, limitations, and exclusions contained in the Policy and Nationwide relies on such provisions, conditions, limitations, and exclusions in defense of the claims asserted against it. Potentially applicable policy provisions, conditions, limitations, and exclusions include, but are not limited to:

**PREMIER BUSINESS OWNERS POLICY
PREMIER AUTO SERVICE
COMMON DECLARATIONS**

***

| | |
|---|---|
| Policy Number: | **ACP BPAK 5586089924** |

Named Insured:    **ZETRO MANAGEMENT COMPANY LLC**
                  **TEAM MASTER LUBE INC**

Mailing Address:  **1999 PASEO DEL PRADO DR**
                  **EL PASO, TX        79936-3731**

***

Policy Period     Effective From **08/06/2021**    To: **08/06/2022**
                  12:01 A.M., Standard Time at your principal place of business.

***

## PROPERTY DECLARATIONS

***

Premises Address    1340 N ZARAGOZA RD    EL PASO    TX    79936-7901

****

Occupancy    OO    Classification: QUICK LUBE

***

WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATE BY A LIMIT OR BY "INCLUDED".

The Property Coverage provided at this premises is subject to a **$1,000 Deductible,** unless otherwise stated.

| **COVERAGES** | **LIMITS OF INSURANCE** |
|---|---|
| Building – Replacement cost | **$442,700** |

***

**OPTIONAL COVERAGES – Other frequently purchased coverage options.**

****

| **Windstorm/Hail Deductible- PB0312 – 1%** | **INCLUDED** |
|---|---|

****

| **Building Wind/Hail Deductible** | **$4,427** |
|---|---|

****

**PB 81 01 (04-11)**

****

**BUSINESSOWNERS**
**PB 00 02 11 14**

****

## PREMIER BUSINESSOWNERS
## PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance. Other

words and phrases that appear in quotation marks have special meaning. Refer to Section H. Definitions. PROPERTY DEFINITIONS.

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. COVERED PROPERTY

Covered Property includes Buildings as described under paragraph a. below, Business Personal Property as described under paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under paragraph 2, PROPERTY NOT COVERED.

***

### 2. COVERED CAUSES OF LOSS

This Coverage Form insures against direct physical loss unless the loss is:

a. Excluded in Section B. EXCLUSIONS;

b. Limited in paragraph A.4. LIMITATIONS in this section; or

c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS.

### 3. LIMITATIONS

a. We will not pay for loss of or damage to:

****

(6) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

****

### 4. ADDITIONAL COVERAGES

#### a. Debris Removal

(1) We will pay your expense to remove debris of Covered Property and debris from the property of others when such debris is caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

9

(2) The most we will pay under this Debris Removal Additional Coverage is 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. This Debris Removal Additional Coverage will not increase the Limits of Insurance provided by this policy.
HOWEVER, this limitation does not apply to any additional debris removal limit provided in paragraph (4) below.

****

(4) If:

    a.  The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

    b.  The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph (2) above;

we will pay up to an additional $25,00 for each location in any one occurrence under this Debris Removal Additional Coverage

****

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

****

2. We will not pay for loss or damage caused by or resulting from any of the following:

****

### b. Consequential Losses

Delay, loss of use or loss of market.

****

### k. Neglect

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

### l. Other Types Of Loss

(1) Wear and tear;

(2) Rust or corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) [MODIFIED BY ENDORSEMENT]

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force, except as provided under the Equipment Breakdown Additional Coverages;

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature;

(c) Marring or scratching; or

(d) Growth of tree, shrub or plant roots causing any physical damage to any underground property, property foundations, roadways, walks, patios or other paved surfaces.

But if any excluded cause of loss that is listed in paragraphs (1) through (7) above results in a "specified cause of loss", "accident" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss", "accident" or building glass breakage.

**\*\*\*\***

**p. Leakage or Seepage**

Constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, whether continuous or intermittent from any:

(1) Heating, air conditioning or refrigerating system;

**\*\*\*\***

3. We will not pay for loss or damage caused by or resulting from any of the following B.3.a. through B.3.c. But if an excluded cause of loss that is listed in B.3.a. through B.3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph B.1. above to produce the loss or damage.

**b. Acts of Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, work methods, repair, constructions, renovation, remodeling, grading, compaction, failure to protect the property;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

**\*\*\*\***

## C.  LIMITS OF INSURANCE

1.  The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations, except as otherwise provided in this Section.

2.  The limits applicable to Additional Coverages are in addition to the Limits of Insurance only if so indicated in that Section of this Coverage Form.

3.  The limits applicable to the Coverage Extensions are in addition to the Limits of Insurance.

**\*\*\*\***

## D.  Deductible [MODIFIED BY ENDORSEMENT]

**\*\*\*\***

## E.  PROPERTY LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**\*\*\*\***

**2.  Appraisal**

[MODIFIED BY ENDORSEMENT]

**3.  Duties In The Event Of Loss Or Damage**

a.  You must see that the following are done in the event of loss or damage to Covered Property:

**\*\*\***

(2) [MODIFIED BY ENDORSEMENT]

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

HOWEVER, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, amount of loss claimed and a detailed description of each item.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records, including financial records and tax returns.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) [MODIFIED BY ENDORSEMENT]

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your "operations as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured ant at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. At our option and expenses, any examination under oath may be video or audio taped as well as being recorded by stenographic record. If a written transcript is prepared of the testimony, then at our request your answers under oath must be signed under oath must be signed under penalty of perjury.

**4. Legal Action Against Us**

[MODIFIED BY ENDORSEMENT]

**5. Loss Payment**

In the event of loss or damage covered by this policy:

a. At our option, we will either:

(1) Pay the value of lost or damages property as described in e. below;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of, or compliance with, any ordinance or law regulating the construction, use or repair of any property.

c. [MODIFIED BY ENDORSEMENT]

d. We will not pay you more than your financial interest in the Covered Property.

\*\*\*\*

**F.  PROPERTY GENERAL CONDITIONS**

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

\*\*\*\*

**4.  Policy Period, Coverage Territory**

Under this form:

**a.**  We cover loss or damage commencing:

**(1)**  During the policy period shown in the Declarations; and;

**(2)**  Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

\*\*\*\*

EFFECTIVE DATE: 12:01 AM Standard Time.          **BUSINESSOWNERS**
      (at your principle place of business)           **PB 03 12 (11 14)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PERCENTAGE DEDUCTIBLE – WIND OR HAIL**

This endorsement modifies insurance provided under the following:

\*\*\*

**PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM**

\*\*\*

The Wind Or Hail Deductible, as shown in the Declarations, applies to loss or damage to Covered Property caused directly or indirectly by Wind or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Wind or Hail occurs, and that loss or damage would not have occurred but for Wind or Hail, such loss or damage shall be considered to be caused by Wind or Hail and therefore part of a Wind or Hail occurrence.

With respect to Covered Property at a location identified in the Declarations, no other deductible applies to Wind or Hail.

The Wind or Hail Deductible applies whenever there is an occurrence of Wind or Hail.

A.  **WIND OR HAIL DEDUCTIBLE CLAUSE**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2% or 5% (as shown in the Schedule) of the limit of Insurance applicable to the property that has sustained loss or damage, or the deductible shown in the declarations, whichever is greater. The limit(s) to be used is the limit(s) shown on the

Declarations or, if applicable, described in the Additional Coverage, Coverage Extensions, or other endorsements providing coverage not otherwise provided. If blanket coverage is applicable to the buildings, structures and/or business personal property, the limit(s) to be used is that shown in the most recent Statement of Values on file with us. This Deductible is calculated separately for, and applies separately to:

1. Each building, if two or more buildings sustain loss or damage;

2. The building and to personal property in that building, if both sustain loss or damage;

3. Personal property at each building, if personal property at two or more buildings sustains loss or damage;

4. Personal property in the open.

We will not pay for loss or damage until the amount of loss or damage exceeds the Deductible. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limits of Insurance.

When property is covered under the Coverage Extension for Newly Acquired Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the values of the property at the time of loss. The applicable percentage for Newly Acquired Property is the highest percentage shown in the Declarations for any described premises.

****

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TEXAS AMENDATORY ENDORSEMENTS**

This endorsement modifies insurance provided under the following:
****
PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM
****

## D.  AMENDMENTS TO THE PROPERTY COVERAGE FORM

1. Under Section B. EXCLUSIONS, in paragraph 2., the following amendments are made:

   ****

   b.  In exclusion l., Other Types Of Loss, paragraph (4) is replaced by the following:

   (4) Settling, cracking, shrinking, bulging, expansion or contraction;

2. Under Section E. PROPERTY LOSS CONDITIONS:

   a.  Conditions 2. Appraisal is replaced by the following:

   **APPRAISAL**

15

If we and you disagree on the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

(1) Pay its chosen appraiser; and

(2) Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

(a) You will retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Property Loss Conditions; and

(b) We will still retain our right to deny the claim.

b. In Condition 3. Duties In The Event Of Loss or Damage, is amended as follows:

(1) Paragraph **a.(2)** is replaced by the following:

(2) Give us prompt notice of the loss or damage. Include a description of the property involved. However, with respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, any claims must be filed with us not later than one year after the date of loss or damage that is the subject of the claims, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim.

(2) Paragraph a.(7) is replaced by the following:

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

c. Condition 4. Legal Action Against Us is replaced by the following, except as provided below:

**LEGAL ACTION AGAINST US**

(1) No one may bring a legal action against us under this policy unless:

(a) There has been full compliance with all of the terms of this insurance, and

(b) The action is brought within 2 years and one day from the date the cause of action first accrues. A cause of action first accrues on the date of the initial breach of our contractual duties alleged in the action.

(2) With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this insurance, unless:

(a) There has been full compliance with all the terms of this insurance; and

(b) The action is brought within the earlier of the following:

(i) Two years and one day from the date we accept or reject the claim; or

(ii) Three years and one day from the date of the loss or damage that is the subject of the claim.

\*\*\*\*

3.  Under Section E. PROPERTY LOSS CONDITIONS, Condition 5. Loss Payment is amended as follows:

a.  Provisions c. pertaining to notice of our intentions and provision h. pertaining to time period for payment of claims are replaced by the following:

(1) **Claims Handling**

(a) Within 15 days after we receive written notice of claim, we will:

(i) Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgement;

(ii) Begin any investigation of the claim; and

(iii) Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

(b) We will notify you in writing as to whether:

(i) The claim or part of the claim will be paid;

(ii) The claim or part of the claim has been denied, and inform you of the reasons for denial;

(iii) More information is necessary, or

(iv) We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in (b)(i) through (b)(iv) above within:

(i) 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

17

(ii) 30 days after we received the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

(2) We will pay for covered loss or damage within 5 business days after:

(a) We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

(b) An appraisal award has been made.

HOWEVER, if payment of the claim or part of the claim is conditioned on your compliance with any terms of this Policy, we will make payment within 5 business days after the date you have complied with such terms.

50. The assertion of any specific provision of the Policy in this Answer is not intended as a waiver or abandonment of other applicable provisions of the Policy. The Policy in its entirety is asserted and incorporated herein by reference.

51. Nationwide reserves the right to seek the Court's leave to assert additional policy provisions within a reasonable time after Plaintiff discloses any additional damages or policy provisions that Plaintiff contends support coverage.

## Second Defense
## Failure of Conditions Precedent

52. Plaintiff has failed to comply with one or more provisions of the Policy, namely showing a loss that falls within the coverage of the policy. Plaintiff is therefore precluded from bringing suit to enforce the Policy. The Policy expressly states:

No one may bring a legal action against us under this policy unless:

(a) There has been full compliance with all of the terms of this insurance, and

(b) The action is brought within 2 years and one day from the date the cause of action first accrues. A cause of action first accrues on the

date of the initial breach of our contractual duties alleged in the action.

53.     For example, without limitation, Plaintiff has failed to:

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. HOWEVER, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, amount of loss claimed and a detailed description of each item.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records, including financial records and tax returns.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your "operations as quickly as possible.

54.     Accordingly, because Plaintiff has not met all conditions precedent to filing this lawsuit, Plaintiff is contractually precluded from bringing this lawsuit against Nationwide.

**Third Defense**
**<u>Failure to Mitigate/Contribution</u>**

55.     Plaintiff is barred from any recovery from Nationwide, in whole or in part, due to Plaintiff's failure to mitigate the alleged damages and its contribution to its own alleged damages. This includes, but is not limited to, Plaintiff's failure to properly maintain the Property and Plaintiff's

failure to fully and adequately repair damages stemming from prior insurance claims for damage to the Property and weather events.

### Fourth Defense
### No Breach of Policy

56.     Plaintiff's claim has been properly investigated, adjusted, and evaluated. There has been no breach of the Policy, thereby precluding recovery of damages pursuant to any contractual and extra-contractual theory of liability, including violation(s) of the Texas Insurance Code and the Texas Deceptive Trade Practices Act.

### Fifth Defense
### Lack of Coverage Precludes Extra-Contractual Liability

57.     The existence of coverage for an insurance claim is necessary to establish the basis of claims for violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. Because Plaintiff's allegations are generally based upon Nationwide's alleged failure to investigate the claim and pay policy benefits, the absence of coverage for the allegedly unpaid amounts of the underlying insurance claim precludes the extra-contractual claims against Nationwide as a matter of law.

### Sixth Defense
### *Bona Fide* Dispute

58.     Under Texas law, an insured bringing an action against its insurer for an alleged breach of a duty of good faith and fair dealing, whether under the common law or as authorized by statute, must carry the burden of proof to establish that the insurer unreasonably denied or delayed payment of an insurance claim when the insurer's liability had become reasonably clear. At all times material to this lawsuit, Nationwide's liability was not "reasonably clear." In other words, nothing more than a bona fide coverage dispute exists between the parties, which precludes Plaintiff from recovering extra-contractual damages in this case.

**Seventh Defense**
**Deductible**

59.     To the extent any additional damage to the Property is determined by the factfinder to be the result of a hail or windstorm, which is denied, Plaintiff's recovery is subject to the applicable 2% wind/hail deductible of $4,427 as shown in the Declarations of the Policy.

**Eighth Defense**
**Tolling of Penalties**

60.     Plaintiff's own delays, actions, and omissions in presenting and proving the claims should not result in Plaintiff's financial benefit. The accrual of per-annum penalties under Texas Insurance Code Chapter 542, if found to be applicable, which is denied, should therefore be tolled. Additionally, under equitable principles, Plaintiff has waived, forfeited, is estopped from asserting, and has otherwise relinquished its entitlement to the per annum penalty under Chapter 542 or any other delay-based or time-based penalty or interest due to Plaintiff's own discretionary delays and inaction in pursuing relief in accordance with the terms of the Policy.

**Ninth Defense**
**Loss Settlement Provisions**

61.     Nationwide relies on the loss settlement provisions set forth in the relevant insurance policy limiting loss payments to actual cash value except as set forth in the Policy.

**Tenth Defense**
**Limits of Liability**

62.     Any recovery by Plaintiff is subject to the applicable limits of insurance for covered damage to the Property of $442,700 as set forth previously. Additionally, Plaintiff may not recover more than its financial interest in the Property.

**Eleventh Defense**
**Excessive Demand**

63.    Nationwide asserts that Plaintiff is not entitled to attorney's fees as Plaintiff has asserted

excessive demands. Plaintiff's counsel sent a demand letter to Nationwide dated February 27,

2023, in which Plaintiff's counsel demanded $50,230.34 for claimed storm damage to the Property,

statutory penalty interest, and attorney's fees. Plaintiff's demand was based on an estimate from

an unknown company. Plaintiff has acted unreasonably and in bad faith by demanding monies to

which Plaintiff is not entitled under the Policy, thereby making the demand unreasonable and,

consequently, excessive.

**Twelfth Defense**
**Statutory Limitations for Punitive Damages**

64.    Any recovery by Plaintiff for punitive damages would be subject to the limitations on

liabilities and damages contained in Chapter 41 of the Texas Civil Practice and Remedies Code,

as well as all other statutory damage caps provided by law.

**Thirteenth Defense**
**Due Process and Equal Protection**

65.    To the extent Plaintiff seeks punitive damages, Nationwide invokes its right under the due

process clause of the Fifth Amendment of the United States Constitution as applied to the states

through the Fourteenth Amendment of the United States Constitution. Nationwide affirmatively

pleads that Plaintiff's pleading of punitive and/or exemplary damages violates the due process

clauses of the Fifth and Fourteenth Amendments.

66.    To the extent Plaintiff prays for punitive damages, Nationwide asserts that such request

should be denied because it violates the equal protection rights guaranteed by the Fifth and

Fourteenth Amendments to the United States Constitution, the provisions of the Eighth

Amendment to the United States Constitution, and the Constitution of the State of Texas, Article I, Sections 13 and 19.

**Fourteenth Defense**
**Plaintiff Failed to Comply with Notice Requirements of Tex. Ins. Code § 542A.003**

67.     Chapter 542A of the Texas Insurance Code applies to Plaintiff's lawsuit as it is an action on a claim under an insurance policy covering real property that arises from alleged storm damage. Plaintiff failed to give proper notice under Tex. Ins. Code § 542A.003, precluding or limiting any right Plaintiff may have to recover attorney's fees. Specifically, Tex. Ins. Code § 542A.003 requires that Plaintiff provide written notice to Nationwide not later than the 61st day before the date Plaintiff files an action to which Chapter 542A applies that must include:

    (1)    a statement of the acts or omissions giving rise to the claim;

    (2)    the specific amount alleged to be owed by the insurer on the claim for damage to or loss of covered property; and

    (3)    the amount of reasonable and necessary attorney's fees incurred by the claimant, calculated by multiplying the number of hours actually worked by the claimant's attorney, as of the date the notice is given and as reflected in contemporaneously kept time records, by an hourly rate that is customary for similar legal services.

68.     Furthermore, if an attorney or other representative gives the notice required under Chapter 542A, the attorney or representative must:

    (1)    provide a copy of the notice to the claimant; and

    (2)    include in the notice a statement that a copy of the notice was provided to the claimant.

69.     Nationwide received a pre-suit notice and demand letter from Plaintiff's counsel on February 27, 2023, in which Plaintiff's counsel asserted $43,503.06 in "Property Damage" but noted $50,230.34 as the "Demanded Amount." However, Plaintiff's counsel did not state the specific amount alleged to be owed by Nationwide on the claim for damage to or loss of covered property. As such, Plaintiff failed to satisfy Tex. Ins. Code § 542A.003(b)(2). Therefore, Plaintiff's demand does not provide sufficient pre-suit notice as required by Tex. Ins. Code § 542A.003.

Accordingly, pursuant to Tex. Ins. Code § 542A.007(d), the Court may not award Plaintiff any attorney's fees incurred after Nationwide raised this defense in its Original Answer on July 6, 2023. In the alternative, to the extent the demand letter is deemed in compliance with the presuit notice requirements under Chapter 542A, the provisions of § 542A.007(a) and (c) may limit or preclude recovery of attorney's fees based on the excessive amounts demanded by Plaintiff.

### Fifteenth Defense
### Failure to Mitigate

70.    Plaintiff's causes of action against Nationwide are barred, in whole or in part, because Plaintiff has failed to take reasonable action(s) to mitigate damages. This includes, but is not limited to, Plaintiff or Plaintiff's authorized agents or representatives' failure to properly maintain and repair the Property from prior insurance claims and/or weather events.

### Sixteenth Defense
### Punitive Damage Limitation

71.    With respect to Plaintiff's claims for damages, any award of punitive damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the amount of economic damages plus $200,000, pursuant to the statutory mandates of Texas Civil Practice & Remedies Code § 41.002–41.009.

### Seventeenth Defense
### Fortuity Doctrine

72.    Plaintiff's coverage under the Policy is precluded and the Plaintiff was, or should have been, aware of an ongoing loss or known loss when the Policy was purchased.

**Eighteenth Defense**
**Offset and Credit**

73.    Plaintiff's damages, if any, must be offset by the amount of applicable policy deductible.

Nationwide will seek any and all available offsets and credits to which Nationwide is entitled under

law.

**Nineteenth Defense**
**Non-Segregation of Damages**

74.    Nationwide asserts that Plaintiff has failed to segregate damages caused by covered

damage to the Property under the Policy for alleged storm-related damage from causes of loss to

the Property uncovered under the Policy, including, but not limited to unrepaired damages to the

Property remaining from a claim made to Liberty Mutual Insurance Company for hail damage to

the Property occurring on or about May 14, 2006, and damages resulting from excluded causes of

loss under the Policy.

## III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Nationwide respectfully prays that Plaintiff

take nothing, that Nationwide be awarded its reasonable and necessary attorney's fees and costs,

and for all such other and further relief to which Nationwide may be justly entitled.

*(Signatures on following page.)*

Respectfully submitted,

*/s/ Patrick M. Kemp*
Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
Aimee D. Velez
Texas Bar No. 24091246
avelez@smsm.com
Segal McCambridge Singer & Mahoney
100 Congress Ave., Ste. 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEYS FOR DEFENDANT
NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served electronically via CM/ECF this 28th day of September, 2023 to:

Matthew M. Zarghouni
Brandon Kuhre
Zar Law Firm
3900 Essex Lane, Ste. 1011
Houston, Texas 77027
matt@zar-law.com
brandon@zar-law.com

*/s/ Patrick M. Kemp*
Patrick M. Kemp